# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 06-2985

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Eastern District of Arkansas. |
| Clinton Bell, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: December 14, 2006
Filed: March 27, 2007

_____

Before WOLLMAN, RILEY, and SHEPHERD, Circuit Judges.

_____

RILEY, Circuit Judge.

Clinton Bell (Bell) conditionally pled guilty to being in possession of a stolen firearm, in violation of 18 U.S.C. § 922(j), reserving the right to appeal the district court's[1] denial of Bell's motion to suppress. On appeal, Bell renews his challenge to the denial of his suppression motion. We affirm.

---

[1]The Honorable J. Leon Holmes, Chief Judge, United States District Court for the Eastern District of Arkansas.

## I.    BACKGROUND

On July 29, 2005, an early-morning burglary of Fort Thompson Sporting Goods (Fort Thompson) in Little Rock, Arkansas, resulted in the theft of seventy-seven handguns and three assault rifles. Given the nature of the items stolen, the North Little Rock Police Department (NLRPD) prioritized the burglary's investigation and deployed a large number of NLRPD detectives and officers. Employees of the store informed NLRPD the stolen guns were new with price tags still attached. Neither the information regarding the store's identity nor the guns bearing price tags was made public before 10:00 p.m. on July 29 at the earliest.

Around 3:00 p.m. that day, Detective R. C. Cox (Detective Cox), a NLRPD police officer with fifteen years of experience, received a call from a patrol officer, who stated an individual (the informant) voluntarily contacted the police and had information about the Fort Thompson burglary. Detective Cox met with the informant, picking the informant up and interviewing her at the NLRPD. Although the informant had not previously provided information to the NLRPD, the informant knew details of the Fort Thompson burglary that were not yet public knowledge. The informant gave Detective Cox the names of some persons possibly involved in the burglary, but did not specifically mention Bell's name. The informant reported observing "brand-new" guns, still bearing their price tags, being sold from Apartment 31 at Hemlock Courts, a housing development in North Little Rock. The informant reported she saw guns being moved from the apartment and observed the guns in the trunk and under the hood of a "newer looking, clean, white Honda [Accord]." The informant reported the white Honda Accord was parked in front of or near Apartment 31. Before ending the meeting, Detective Cox obtained the informant's name, phone number, and other contact information.

NLRPD Detective Brandt Carmical (Detective Carmical) took an unmarked vehicle to investigate the informant's tip. While driving through Hemlock Courts, Detective Carmical observed only one white Honda Accord, which was parked in a lot near Apartment 31. According to Detective Carmical's testimony, shortly after he

began surveillance, a man and a woman exited either Apartment 30 or 31 (which were located next door to each other), entered the white Honda Accord, and drove out of the parking lot. Detective Carmical contacted his supervisor, who instructed Detective Carmical to follow the vehicle and stop it to search for guns. Detective Carmical then contacted dispatch and requested a patrol officer stop the vehicle.

NLRPD Officer Michael Miller (Officer Miller) responded to Detective Carmical's call. Officer Miller was advised the vehicle was linked to the Fort Thompson burglary and might contain firearms. Given the risk the vehicle might contain weapons, Officer Miller was instructed to treat the investigative stop as a felony stop and to handcuff the vehicle's occupants in accordance with NLRPD practice.

Upon stopping the vehicle, Officer Miller and the other responding officers approached the vehicle with their weapons drawn and shouted at the occupants to exit the vehicle. The driver, later identified as Bell, turned and reached back toward the dashboard and console area before exiting. The officers handcuffed Bell and his passenger, Deundra Baker (Baker). Officer Miller looked inside the vehicle, observing clumps of a white powdery substance scattered across the driver's side floor mat and a plastic baggie sticking up underneath the console. Officer Miller then pulled a plastic baggie containing suspected (later confirmed) crack cocaine from the vehicle's console. Officer Miller arrested Bell and Baker, and transported them to the NLRPD.

At the NLRPD, Detective Cox read Bell his <u>Miranda</u>[2] rights. Bell waived his rights and admitted in a taped statement he had one of the stolen Fort Thompson guns. After giving his statement, Bell accompanied officers to retrieve the gun from his apartment. Officers later confirmed the gun was one of the Fort Thompson guns stolen earlier that day.

---

[2]<u>Miranda v. Arizona</u>, 384 U.S. 436 (1966).

Following Bell's indictment for being a felon in possession of a firearm and for possession of a stolen firearm, Bell moved to suppress the gun and his post-arrest statement. The district court denied Bell's motion, holding the officers (1) had reasonable suspicion to stop Bell's vehicle, (2) did not use unreasonable force during the stop given their suspicion the vehicle might contain weapons, and (3) had probable cause to arrest Bell for the drugs found in the vehicle. Bell thereafter entered a conditional plea of guilty to possession of a stolen firearm, reserving the right to appeal the district court's order. The district court sentenced Bell to 51 months' imprisonment and 3 years' supervised release. On appeal, Bell renews his challenge to the stop, detention, and arrest.

## II.    DISCUSSION

When reviewing a district court's denial of a suppression motion, we review for clear error the district court's factual findings and review de novo whether the Fourth Amendment was violated. See United States v. Sledge, 460 F.3d 963, 966 (8th Cir. 2006), cert. denied, __ S. Ct. __, 2007 WL 469747 (U.S. Mar. 19, 2007) (No. 06-9403). "Guided by this standard, we must affirm the district court's decision on a suppression motion unless it is not supported by substantial evidence on the record; it reflects an erroneous view of the applicable law; or upon review of the entire record, [we are] left with the definite and firm conviction that a mistake has been made." United States v. Janis, 387 F.3d 682, 686 (8th Cir. 2004) (internal quotation omitted).

Bell first argues the arresting officers lacked reasonable suspicion to stop his car. The Fourth Amendment permits an investigative stop of a vehicle if officers have a reasonable suspicion the vehicle or its occupants are involved in criminal activity. United States v. Bell, 183 F.3d 746, 749 (8th Cir. 1999). Officers must possess "a particularized and objective basis" for suspecting criminal activity. United States v. Jacobsen, 391 F.3d 904, 906 (8th Cir. 2004). "Whether the particular facts known to the officer amount to an objective and particularized basis for a reasonable suspicion of criminal activity is determined in light of the totality of the circumstances." United States v. Maltais, 403 F.3d 550, 554 (8th Cir. 2005), cert. denied, 126 S. Ct. 1345

(2006). "[T]he standard employed is less demanding than the standard of probable cause that governs arrests and full-scale Fourth Amendment searches, both with respect to the amount of supporting information that is required to establish reasonable suspicion and with respect to the degree of reliability that the information must exhibit." United States v. Spotts, 275 F.3d 714, 718 (8th Cir. 2002) (citing Alabama v. White, 496 U.S. 325, 330 (1990)); see, e.g., United States v. Sokolow, 490 U.S. 1, 7 (1989).

Reasonable suspicion may be based on an informant's tip where the tip is both reliable and corroborated. See Adams v. Williams, 407 U.S. 143, 147 (1972); Jacobsen, 391 F.3d at 906. In this case, the suspicion to stop Bell's vehicle was based on more than "inarticulate hunches." See Terry v. Ohio, 392 U.S.1, 22 (1968). An informant reported observing some of the stolen firearms both at Apartment 31 in Hemlock Courts and in a newer-looking white Honda Accord parked in front of or near Apartment 31. In assessing the informant's reliability and credibility, Detective Cox considered the informant's willingness to contact NLRPD officials voluntarily, to meet at the NLRPD with Detective Cox personally, and to provide the informant's own personal information. See United States v. Carpenter, 422 F.3d 738, 744 (8th Cir. 2005), cert. denied, 126 S. Ct. 1115 (2006) (holding officers could assess the informant's credibility and reliability given the information was provided in person). Detective Cox also considered the informant's knowledge of certain details of the burglary, specifically, information that was not yet publicly known, including the identity of the store burglarized and the fact the guns stolen were new and still displayed price tags. Detective Carmical corroborated the informant's tip through his investigation and surveillance of Apartment 31 and the white Honda Accord (the only vehicle of its description located at the Hemlock Courts apartment complex), thus strengthening the reliability of the tip. See id. Accordingly, Detective Carmical had reasonable suspicion to believe the vehicle might be carrying some of the firearms stolen from Fort Thompson, thereby permitting an investigative stop of the vehicle.

Bell next argues, even assuming there was reasonable suspicion to stop his vehicle, the officers' conduct exceeded the legitimate bounds of an investigative stop because they drew their weapons, ordered Bell out of the car and to the ground, handcuffed him, and placed him under arrest. Again, we disagree. "The scope of the detention must be carefully tailored to its underlying justification," and "the investigative methods employed should be the least intrusive means reasonably available to verify or dispel the officer's suspicion in a short period of time." Florida v. Royer, 460 U.S. 491, 500 (1983); see, e.g., United States v. Bloomfield, 40 F.3d 910, 916 (8th Cir. 1994) (en banc). During any investigative stop, "officers may take steps reasonably necessary to protect their personal safety." United States v. Shranklen, 315 F.3d 959, 961 (8th Cir. 2003). In light of the nature of the suspected crime of possession of stolen handguns and assault rifles, as well as the possibility of firearms inside the vehicle, the officers' actions were reasonably necessary to maintain the status quo, protect the officers, and allow them to conduct a limited search of the vehicle immediately and without interference. See United States v. Navarrete-Barron, 192 F.3d 786, 791 (8th Cir. 1999) (holding officers' actions of drawing firearms while approaching defendant's vehicle, handcuffing vehicle's occupants, and placing them in a police unit were reasonable given officers' reasonable suspicion the vehicle's occupants "had been or were engaged in drug trafficking, which very often is accompanied by dangerous weapons").

Additionally, we agree with the district court that Officer Miller's observation of Bell's furtive movement toward the vehicle's console immediately following the stop "further counseled for caution on the part of the officers." Given the nature of the firearms burglary, the officers had reasonable suspicion to believe Bell might be reaching for a weapon and thus were justified in searching the vehicle's interior and console under the limited protective search doctrine. See Michigan v. Long, 463 U.S. 1032, 1047-49 (1983). Because "investigative detentions involving suspects in vehicles are especially fraught with danger to police officers," the Supreme Court has recognized that once reasonable suspicion is established, a limited search of an automobile's passenger compartment for weapons is permissible. Id. at 1047, 1049.

"This limited search is no less permissible where, as here, the occupants have been removed from the automobile before the search is made." United States v. Cummins, 920 F.2d 498, 502 (8th Cir. 1990). Once Officer Miller looked into the vehicle and observed in plain view both the clumps of white powder on the floor mat and a plastic baggie sticking out from the console, Officer Miller conducted a limited search of the vehicle's console, where Bell had reached before exiting the vehicle, and discovered the baggie of crack cocaine. At that point, Officer Miller had probable cause to arrest Bell for the drugs. See id. (concluding officers had probable cause to arrest upon discovering drugs on the floor of defendant's car).

Because Bell's stop, detention, and arrest were valid under the Fourth Amendment, Bell's post-arrest statement and the firearm he retrieved for the NLRPD officers should not be suppressed.

## III.    CONCLUSION
Therefore, we affirm the district court's denial of Bell's motion to suppress.

_____