# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 07-3354

_____

United States of America,　　　　　　*
　　　　　　　　　　　　　　　　　　*
　　　　　Plaintiff - Appellee,　　　*
　　　　　　　　　　　　　　　　　　*　Appeal from the United States
　　v.　　　　　　　　　　　　　　　*　District Court for the
　　　　　　　　　　　　　　　　　　*　Western District of Missouri.
Charles West, III,　　　　　　　　　*
　　　　　　　　　　　　　　　　　　*　　　　[UNPUBLISHED]
　　　　　Defendant - Appellant.　　*

_____

Submitted: April 17, 2008
Filed: June 9, 2008

_____

Before GRUENDER, BRIGHT, and BENTON, Circuit Judges.

_____

PER CURIAM.

After the district court[1] denied Charles West, III's ("West") motion to suppress a firearm discovered following a warrantless automobile search, West conditionally pled guilty to unlawful possession of a firearm by a felon in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2) and received a sentence of 30 months' imprisonment and three years supervised release. West appeals the denial of his motion to suppress

_____

[1]The Honorable Howard F. Sachs, United States District Judge for the Western District of Missouri. The district court adopted the Report and Recommendation of the Honorable Robert E. Larsen, United States Magistrate Judge for the Western District of Missouri.

arguing that the district court erred in concluding that the officers had probable cause to conduct a warrantless search of the automobile. We affirm.[2]

## I.

On the evening of March 26, 2006, Kansas City Police Officers Merrill and Davis were on patrol duty in a marked car when they noticed a metallic 2000 Chevrolet Suburban ("Suburban") parked without license plates or a temporary permit that resembled a stolen vehicle on their "hot sheet."[3] The officers decided to issue a citation to the Suburban's driver for not having license plates or a temporary permit. As they approached the Suburban, the officers also saw a fake temporary tag in the back left window with their spotlight.[4]

When the officers arrived, an individual emerged from the rear passenger's side of the Suburban and started to walk away immediately. To prevent the individual from fleeing, Officer Merrill exited the patrol car and handcuffed him. Officer Merrill then observed West, the driver of the Suburban, lean down toward the center floorboard. Because of West's movements and uncertainty as to whether he had a weapon, Officer Davis removed West from the Suburban.

After removing West from the Suburban, the officers observed a handful of plastic sandwich baggies protruding from the center console area. At the suppression hearing, Officer Merrill testified that narcotics are commonly packaged in such

_____

[2]Because West does not challenge the magistrate judge's factual findings on appeal, we draw this background section principally from the magistrate judge's Report and Recommendation.

[3]A "hot sheet" lists vehicles that had been stolen in the Kansas City area over a seven-day period.

[4]The officers later verified the tags were fake on sight.

baggies. The officers also observed a large amount of cash scattered all over the floor in the front of the Suburban, on the front passenger's lap and on the center seat area. Based on their suspicion that a narcotics transaction had taken, or was going to take place, the officers called for a narcotics K-9. In the meantime, the officers completed a computer check that revealed none of the persons in the Suburban had any outstanding warrants. The check did reveal, however, that West had a felony conviction.

The narcotics K-9 arrived approximately 15-20 minutes later. After performing a sweep of the interior of the Suburban, the K-9 alerted to a bag in the back seat, on the front center console area, and in the glove box.[5] Based on these alerts, the officers searched the vehicle and recovered the firearm that formed the basis for West's prosecution.[6] The officers also found a variety of drug-related paraphernalia and $4,272 in denominations of five-, ten-, twenty-, fifty-, and one-hundred dollar bills.

## II.

"When reviewing a district court's denial of a suppression motion, we review for clear error the district court's factual findings and review de novo whether the" search violated the Fourth Amendment. United States v. Bell, 480 F.3d 860, 863 (8th Cir. 2007) (citations omitted). "Guided by this standard, we must affirm the district

---

[5]In his Report and Recommendation, the magistrate judge noted some ambiguity as to how the narcotics K-9 gained access to the interior of the Suburban. West argues that the record conclusively establishes that the officers placed the K-9 in the Suburban. We need not resolve this factual uncertainty as probable cause existed to search the interior of the vehicle. See infra note 7.

[6]Officer Merrill recovered from the floorboard/center console area a loaded Springfield Armory, .40 caliber semi-automatic pistol, a magazine and eleven rounds of ammunition. The center console area is directly under the dash and is readily accessible from the driver's seat by reaching toward one's right foot.

court's decision on a suppression motion unless it is not supported by substantial evidence on the record; it reflects an erroneous view of the applicable law; or upon review of the entire record, [we are] left with the definite and firm conviction that a mistake has been made." United States v. Janis, 387 F.3d 682, 686 (8th Cir. 2004) (internal quotation omitted).

Although most warrantless searches are *per se* unreasonable under the Fourth Amendment, see, e.g., United States v. Cortez-Palomino, 438 F.3d 910, 913 (8th Cir. 2006), police officers may lawfully perform a warrantless search of a vehicle if they had probable cause to believe the vehicle contained contraband or other evidence of a crime before the search began. See United States v. Wells, 347 F.3d 280, 287 (8th Cir. 2003); see also United States v. Riedesel, 987 F.2d 1383, 1389 (8th Cir. 1993) (reiterating that, pursuant to the "automobile exception" a vehicle may be searched without a warrant if there is probable cause). Probable cause exists "where, in the totality of the circumstances, there is a fair probability that contraband or evidence of a crime will be found in a particular place." United States v. Kennedy, 427 F.3d 1136, 1141 (8th Cir. 2005); see also United States v. Fladten, 230 F.3d 1083, 1085 (8th Cir. 2000) ("Probable cause exists when, given the totality of the circumstances, a reasonable person could believe there is a fair probability that contraband or evidence of a crime would be found in a particular place."). In determining whether probable cause exists, officers "may [also] draw inferences based upon their experience." Cortez-Palomino, 438 F.3d at 913.

Before the magistrate judge, West argued that the firearm seized from the Suburban should be suppressed because: (1) the officers did not have reasonable suspicion to conduct the car stop; and (2) the subsequent search of the vehicle was not supported by probable cause. West renews neither argument on appeal. Rather, West now contends that the firearm should be suppressed because the officers discovered

-4-

it only after a K-9 search of the Suburban's interior which itself was not supported by probable cause.[7]

The magistrate judge concluded that the officers had probable cause to believe that a narcotics transaction had taken place (or was about to) based on the following: (1) the Suburban had fake tags; (2) a passenger in the Suburban attempted to flee when the officers arrived; (3) West leaned down toward the floorboard near the central console; (4) there were numerous plastic sandwich baggies in which narcotics are commonly packaged protruding from the center console; and (5) a large amount of cash was scattered throughout the front of the vehicle. West challenges none of these findings on appeal. Instead, he simply argues that these facts, either standing alone or collectively, do not support a finding of probable cause because they are "susceptible to a variety of interpretations, some innocent and some sinister." We disagree.

We have held that simply observing the presence of containers that are known to typically contain illegal narcotics gives rise to probable cause to perform a warrantless search of a vehicle. See Cortez-Palomino, 438 F.3d at 913 ("All three troopers testified that their experience led them to believe that the green cellophane packages contained illegal narcotics. . . . This provided probable cause for the officers to lower the tailgate and search the pickup without a warrant."); cf. Texas v. Brown, 460 U.S. 730, 742-43 (1983) (officer's observation of a balloon tied in a manner consistent with trafficking illegal narcotics provided probable cause under the plain view doctrine). In this case, the officers not only saw sandwich baggies in the Suburban that in their experience are used to package narcotics, but also observed

---

[7]Because West did not make this argument before the magistrate judge (or district court), the Government suggests that we apply a plain error standard of review. We decline to do so because the magistrate judge specifically considered whether probable cause existed to justify a K-9 search of the Suburban's interior. We nevertheless reject West's contention that the search was unconstitutional.

-5-

other suspicious behavior (as detailed above) that led them to believe the Suburban contained evidence of a possible narcotics transaction. We therefore readily conclude that given the totality of the circumstances there was a fair probability for the officers to believe that evidence of narcotics activity would be found in the Suburban.

Because the officers had probable cause to search the Suburban *themselves*, they were certainly justified to use the K-9 to search its interior. We therefore need not decide the issue of what burden – reasonable suspicion or probable cause – a police officer must satisfy to justify a non-consensual K-9 sniff of a vehicle's interior at the officer's direction. See United States v. Lyons, 486 F.3d 367, 373 (8th Cir. 2007) ("Absent police misconduct, the instinctive actions of a trained canine [sniffing the interior of a vehicle] do not violate the Fourth Amendment.") (citations omitted); United States v. Williams, 429 F.3d 767, 772 (8th Cir. 2005) ("The use of [a] drug-sniffing dog on the *exterior* of a vehicle during a valid traffic stop does not infringe upon any Fourth Amendment Rights.") (emphasis added); United States v. Hutchinson, 471 F. Supp. 2d 497, 505-510 (M.D. Pa. 2007) (discussing various federal courts' analysis as to the constitutionality of a non-consensual canine sniff inside a lawfully stopped vehicle).

## III.

For the foregoing reasons, we affirm the decision of the district court.

_____