# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 10-1770

_____

United States of America,          *
                                   *
        Plaintiff - Appellee,      *
                                   *   Appeal from the United States
v.                                 *   District Court for the District
                                   *   of Minnesota.
Ion Datcu,                         *
                                   *
        Defendant - Appellant.     *

_____

Submitted: November 18, 2010
Filed: December 23, 2010

_____

Before MURPHY, SMITH, and BENTON, Circuit Judges.

_____

MURPHY, Circuit Judge.

Ion Datcu and another man were arrested after police investigated a concerned citizen's tip that two men were engaging in suspicious activity by two banks in Maplewood, Minnesota. A search of the two men, their rental vehicle, and their hotel room revealed numerous tools associated with fraud and identity theft. Datcu pled guilty to conspiring to possess device making equipment and aiding and abetting aggravated identity theft while reserving the right to raise Fourth Amendment challenges to the evidence gathered by the police. The district court denied his motion to suppress and sentenced Datcu to 75 months in prison. Datcu appeals the denial of his motion to suppress and a four level sentencing enhancement imposed under U.S.S.G. § 2B1.1(b)(2)(B). We affirm.

I.

At 6:00 p.m. on Sunday, March 15, 2009, the Maplewood police department received a telephone call reporting suspicious activity in an area near the Maplewood Mall. The caller had observed two men walking between the Bremer Bank and the TCF Bank. Neither bank was open for business at the time and the caller was concerned that the men were trying to break into the banks' night deposit boxes. The police stayed in communication with the caller while they investigated the tip.

Officer Paul Bartz received the report and arrived at the parking lot adjacent to banks approximately two minutes later. He observed the black SUV mentioned by the caller; it was parked "just next to" a dumpster in the corner of the Bremer Bank parking lot. It did not appear to Officer Bartz that the SUV would have been visible from the main road. Bartz also saw a person later identified as Ion Datcu walking from the side of TCF Bank toward Bremer Bank and a second man seated in the passenger side of the SUV. That man was subsequently identified as Stelian Cipu. Both men matched the descriptions given by the caller: Datcu was dressed in all black, and Cipu was wearing blue jeans.

Bartz parked his fully marked police car at an angle in front of the SUV. As he did so, he noticed that Datcu changed course and turned to walk towards the mall. Cipu also got out of the SUV and started to walk in the same direction. His suspicions aroused, Bartz got out of his car and called to both men to "stop and come back." Cipu immediately stopped and turned around, but Datcu returned only after Bartz issued a second order. Bartz instructed the two men to put their hands on the police car and talked to them until backup officers arrived. Bartz then walked Datcu to the back of the car while two officers took Cipu over near the SUV.

Datcu was asked to identify himself. He gave his name and said his wallet and identification were inside the SUV. Bartz then conducted a "pat search" of Datcu

since it was his "training and experience that persons who may be engaged in criminal activity will often be armed." The search revealed a cell phone and a credit card issued in the name of a woman. At the suppression hearing, Bartz testified that Datcu had consented both to removal of the credit card from his pocket and to a subsequent search of the SUV, but Datcu vehemently denied giving consent to either search.

Bartz learned through a records check that Datcu had rented the SUV and proceeded to search it. In the center console between the driver and passenger seats he found a wallet containing a number of Visa gift cards; a list of addresses; a second wallet with Datcu's identification, $2,500 cash, and a number of credit cards issued to third parties; and a radar detector. Elsewhere in the SUV Bartz discovered a bag containing a wig, additional credit cards in third party names, a screwdriver, a razor, and a concave mirror. At some point other officers at the scene frisked Cipu and found wallets, a screwdriver, and a chisel.[1] Bartz testified that, based on his training and experience, these tools were consistent with items criminals use to "break into something." Bartz directed the other officers to place Datcu and Cipu under arrest for "possession of theft tools."

Following their arrests, both Cipu and Datcu were more thoroughly searched and taken to the Ramsey County Jail. The SUV was also towed since it was a rental vehicle and "[t]here was no one there to take immediate control" of it. A subsequent inventory search revealed a single hotel room key and receipt for a hotel room at the Emerald Inn in Maplewood. After securing warrants to search the hotel room and a computer located in it, officers discovered more evidence of identity theft, including a magnetic strip reader and portable credit card scanner.

---

[1] At the suppression hearing Bartz testified that Cipu was frisked "at some point prior to [his] arrest command." Although the government did not elicit whether the search of Cipu occurred before, during, or after the vehicle search, the magistrate judge found that Cipu's frisk occurred "prior to the vehicle search," a finding not supported by the record.

The government charged Datcu with multiple counts related to his fraud, identity theft, and device making scheme.[2] Datcu moved to suppress evidence obtained in the warrantless search and seizure of his person and his rental car and in the warrant search of his hotel room. He also conditionally pled guilty to conspiring to produce and possess device making equipment and aiding and abetting aggravated identity theft in violation of 18 U.S.C. §§ 2, 371, 1028A, and 1029(a). The district court denied his motion to suppress and subsequently sentenced Datcu to 75 months in prison. Included in its sentencing calculations was a four level enhancement for taking part in a scheme with 50 or more but fewer than 250 victims. See U.S.S.G. § 2B1.1(b)(2)(B).

Datcu now appeals the district court's denial of his motion to suppress as well as its imposition of the four level sentencing enhancement. The government has moved to strike portions of Datcu's appellate brief as outside the scope of his plea agreement's limited right of appeal.

II.

Datcu first appeals the district court's order denying his motion to suppress. The district court held that the warrantless search of Datcu and his rental vehicle did not violate the Fourth Amendment because: (1) the officers had reasonable suspicion that criminal activity was afoot under Terry v. Ohio, 392 U.S. 1 (1968) and Michigan v. Long, 463 U.S. 1032 (1983); (2) they had probable cause to believe contraband would be found in the SUV under the automobile exception to the warrant requirement; and (3) they would have inevitably discovered the contraband in the vehicle. Because we agree with the district court that there was probable cause to

_____

[2] Cipu ultimately pled guilty to one count of conspiring to produce and possess device making equipment and was sentenced to time served.

believe contraband would be found in Datcu's SUV at the time the officers searched it, we affirm its ultimate holding that his Fourth Amendment rights were not violated.[3]

"As long as the law enforcement officials have probable cause, they may search an automobile without a warrant under the automobile exception." United States v. Fladten, 230 F.3d 1083, 1085 (8th Cir. 2000) (per curiam). Probable cause exists when, under the totality of the circumstances, a reasonable person could believe there is a fair probability that contraband or evidence of a crime will be found in a particular place. Id. We review the district court's factual findings for clear error and its legal conclusions de novo. Id.

In its order denying Datcu's motion to suppress, the district court held that "discovery of a screwdriver, a chisel, and a third-party credit card on the person of co-defendant Cipu, along with all the other existing circumstances, was sufficient to establish probable cause to believe that contraband would be found in the SUV." On appeal, Datcu argues that it is "unclear from the record whether the automobile search was taking place during or after the other officers searched Mr. Cipu." As a result he claims the district court clearly erred in finding that Cipu's frisk occurred "[p]rior to the vehicle search" and in concluding that the evidence could be used in the probable cause determination.

At the suppression hearing, Officer Bartz testified that after he arrived at the scene, he stopped Datcu, separated him from Cipu, then frisked Datcu and attempted to secure Datcu's consent to search the SUV.[4] Once the officers discovered evidence

---

[3] We express no opinion on the legality of the pat search of Datcu or the related search of his vehicle under Terry and Long. Compare United States v. Jones, 606 F.3d 964, 967 (8th Cir. 2010) (per curiam) (officers must have a "particularized and objective basis" that a suspect is armed and dangerous to justify Terry frisk).

[4] The district court expressly found that "consent was not given," and the government does not challenge this finding on appeal.

in the SUV relevant to fraud and identity theft, Bartz directed the other officers to place both Datcu and Cipu under arrest.

While Cipu's pat search and the vehicle search both occurred "at some point prior to [Bartz's] arrest command," it is unclear from the record whether one preceded the other or whether they occurred simultaneously. The district court thus erred in finding Cipu had been pat searched and the screwdriver and chisel discovered "[p]rior to the vehicle search." See United States v. Houston, 338 F.3d 876, 881 (8th Cir. 2003) (a record "that has *no* evidence supporting" a factual finding is clearly erroneous); compare United States v. Sanders, 341 F.3d 809, 818 (8th Cir. 2003), cert. denied, 540 U.S. 1227 (2004) ("A finding is 'clearly erroneous' when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.").

We agree with the district court, however, that at the time the officers searched the SUV a reasonable person could believe there was a fair probability that contraband would be found in it. A concerned citizen had reported his suspicion that two men were burglarizing the night deposit boxes at the Bremer and TCF banks located near Maplewood Mall. Officer Bartz responded just two minutes after the call and observed two men matching the descriptions the caller had provided. Cipu was dressed in blue jeans and Datcu was dressed in all black. Bartz also observed an SUV matching the caller's description and parked in a concealed fashion beside a dumpster near the closed banks. Bartz also observed that the SUV had California license plates. When Bartz pulled up in his fully marked police car, Cipu got out of the SUV and started to walk in the other direction. Datcu appeared from between the banks but changed direction when he saw the police car. Bartz ordered Datcu to stop, but he initially continued walking in the direction of the mall. We conclude that the totality of these circumstances would lead a reasonable person to believe that there was a fair probability that burglary and theft tools would be found in the vehicle.

Not only was the concerned citizen's tip about suspected illegal activity specific and detailed, but most of it was corroborated by Officer Bartz's observations when he arrived at the scene. The only individuals present matched the race and attire the caller had described, and the only vehicle in the vicinity matched the caller's description and was parked in a concealed fashion. See United States v. Nolen, 536 F.3d 834, 839–41 (8th Cir. 2008) (an "identified, but unproven informant's" "specific, detailed information that was independently corroborated" by police officers contributed to probable cause to search automobile); United States v. Marchena-Borjas, 209 F.3d 698, 700 (8th Cir. 2000) (per curiam) (the identification of individual suspected of criminal activity prior to the vehicle search "corroborated yet another of [an anonymous tipster's] details and further supported probable cause"). As the Supreme Court explained in Illinois v. Gates, it "is enough, for purposes of assessing probable-cause, that corroboration through other sources of information reduced the chances of a reckless or prevaricating tale, thus providing a substantial basis for crediting the hearsay." 462 U.S. 213, 244–45 (1983) (quotation omitted).

This is not a case where a citizen's report was the only factor supporting the magistrate judge's probable cause determination. Bartz observed Datcu and Cipu in a location unusual for that day and time—parked in the evening in a concealed manner in an adjacent parking lot to the closed banks. Datcu's all black outfit made him less visible from a distance, and both men changed course once they saw Officer Bartz, apparently seeking to elude him and to distance themselves from the concealed vehicle with out of state license plates.

While any one of these factors alone would not create probable cause, when viewed in their totality and in combination with the concerned citizen's tip, a reasonable person could believe that a fair probability existed that burglary tools would be found in the SUV. See Minn. Stat. § 609.59 (criminalizing possession of burglary or theft tools); United States v. West, 280 Fed. App'x 563, 566 (8th Cir. 2008) (unpublished per curiam) (SUV passenger's attempt to flee when police officers

arrived contributed to probable cause finding); United States v. Riedesel, 987 F.2d 1383, 1390 (8th Cir. 1993) (officer's observation of the defendant's car "parked in an unusual location" contributed to finding of probable cause); compare United States v. Bloomfield, 40 F.3d 910, 918 n.9 (8th Cir. 1994) (en banc), cert. denied, 514 U.S. 1113 (1995) (noting that "out-of-state license plates," if only one of two factors, would not suffice under the Fourth Amendment but that the "six factors" in that case did). Thus, this case is different from those where law enforcement relied only on an anonymous tip. Compare Florida v. J.L., 529 U.S. 266, 272 (2000) (noting that a tip must "be reliable in its assertion of illegality, not just in its tendency to identify a determinate person"); United States v. Wells, 223 F.3d 835, 839–40 (8th Cir. 2000).

Because we conclude that the police had probable cause to conduct a warrantless search of the SUV, we affirm the district court's denial of Datcu's motion to suppress. We therefore need not address the government's alternate rationales for affirmance and deny as moot its motion to strike portions of Datcu's brief.

## III.

Datcu finally argues that the district court committed procedural error at sentencing by imposing a four level enhancement under U.S.S.G. § 2B1.1(b)(2)(B) for defrauding 50 or more and fewer than 250 victims. He asserts that the court erred in finding that Datcu victimized 50 or more individuals because the pre-sentence investigation report (PSR) listed "only four substantiated victims having suffered a documented loss."

We disagree for several reasons. First, Datcu acknowledged in his plea agreement that he was "responsible for the offense involving more than 50 but fewer than 250 victims." See United States v. Early, 77 F.3d 242, 244 (8th Cir. 1996) (per curiam) (a defendant may not challenge on appeal the application of the sentencing guidelines as stated in the plea agreement if he did not articulate his objection at the

-8-

time or seek to withdraw from it). Second, Datcu failed to object to the district court's adoption of the PSR's factual finding that 112 accounts found on Datcu's computer were compromised resulting in an actual loss of over $100,000. See United States v. Barrera, 562 F.3d 899, 901 (8th Cir. 2009) (failure to object to factual findings in the PSR waives the issue unless the defendant can demonstrate plain error). Third, Datcu ignores a recent amendment to the guidelines defining a "victim" as "any individual whose means of identification was used unlawfully or without authority." U.S.S.G. § 2B1.1 cmt. n.4(E)(ii) (effective Nov. 2009). For all of these reasons, we conclude that the district court did not commit procedural error in imposing a four level sentencing enhancement under U.S.S.G. § 2B1.1(b)(2)(B).

Accordingly, the judgment of the district court is affirmed.

_____