# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 10-1096

_____

United States of America,                    *
                                             *
      Plaintiff - Appellee,         *
                                             *    Appeal from the United States
    v.                             *    District Court for the Southern
                                             *    District of Iowa.
Angelo L. Hambrick, also known as            *
Deangelo Hambrick,                           *
                                             *
      Defendant - Appellant.        *

_____

Submitted: September 22, 2010
Filed: January 20, 2011

_____

Before BYE, BEAM, and SMITH, Circuit Judges.

_____

BYE, Circuit Judge.

Angelo Hambrick entered a conditional plea of guilt to possessing with intent to distribute at least five grams of cocaine base in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B), reserving an appeal from the denial of his motion to suppress. The district court[1] sentenced Hambrick to 120 months' imprisonment and eight years' supervised release. On appeal, Hambrick contends the stop of his vehicle violated the Fourth Amendment, the subsequent searches of his vehicle and his person were

---

[1] The Honorable John A. Jarvey, District Judge, United States District Court for the Southern District of Iowa.

invalid, and the district court erred by not suppressing his statements to law enforcement.  We affirm.

I

On January 20, 2009, Corporal Gilbert Proehl of the Davenport Police Department received a tip from a confidential informant that Angelo Hambrick was in town selling crack cocaine.  The informant was well known to law enforcement and had provided accurate information in the past which led to three narcotics seizures.  According to Proehl, the informant claimed to have personally witnessed Hambrick remove crack cocaine from his buttocks and distribute it to others.  One week later, the informant notified Proehl that Hambrick was en route from Chicago, Illinois, to the 700 block of Pershing Avenue in Davenport, Iowa, and he was in possession of crack cocaine.  The informant indicated Hambrick would be driving a dark-colored or black Monte Carlo with Illinois license plates and a missing gas-tank door.

Based on the information, Proehl proceeded to set up surveillance at the location described, and shortly thereafter, he spotted the vehicle described by the informant.  Hambrick, who was driving the vehicle alone, exited the vehicle and briefly entered a residence on Pershing Avenue.  At this time, Proehl called for additional law enforcement to assist.  After Hambrick left the residence, Proehl followed his vehicle, at which point Davenport Police Sergeant Kevin Smull radioed to Proehl to confirm that Hambrick's license had been suspended.  Shortly thereafter, Proehl decided to stop Hambrick before he arrived at his next destination.  The officers effectuated the stop by boxing Hambrick's car in to avoid a high-speed chase.

Hambrick was removed from his vehicle and arrested for driving under suspension.  He was placed in the rear seat of Officer Jason Ellerbach's patrol car, where Ellerbach read Hambrick his <u>Miranda</u> rights and transported him to the police station.  Meanwhile, officers at the site of the arrest searched the passenger

compartment of Hambrick's vehicle, discovering marijuana residue on the floorboard. The officers called in K-9 Officer Gary Kerr and his canine to perform a "sniff" of the car, which resulted in the discovery of a digital scale covered in cocaine residue in the trunk.

At the police station, Hambrick was led to an interview room, patted down for weapons, and removed from his handcuffs. After Proehl received word that cocaine residue was found in Hambrick's vehicle, Proehl informed Hambrick of this fact and Hambrick stated the scale was left by someone else and he did not know anything about the cocaine residue. Proehl then told Hambrick he would be searched to ensure he did not have anything on him, to which Hambrick responded, "That's cool." Hambrick was strip-searched and crack cocaine was recovered from between his buttocks. Hambrick was then escorted to the county jail.

Based on the above events, Hambrick was charged with possession with intent to distribute at least five grams of cocaine base in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B). Due to a prior felony drug conviction, he was subject to a ten-year mandatory minimum sentence. After the district court denied Hambrick's motion to suppress evidence and statements, Hambrick entered a conditional guilty plea. On January 8, 2010, the district court imposed the mandatory minimum sentence of 120 months' imprisonment and eight years' supervised release. Hambrick now appeals.

II

On appeal, Hambrick raises four issues. He first argues the stop of the vehicle and his detention violated his Fourth Amendment rights. Next, he maintains the automobile search was not a valid search incident to arrest. Third, Hambrick argues the search of his person cannot be justified on the basis of his consent to search. Lastly, Hambrick contends his statement to officers should be suppressed. We address each of these arguments in turn.

-3-

A. The Stop of Hambrick's Vehicle

We first address Hambrick's assertion that his Fourth Amendment rights were violated because the stop of his vehicle was merely discretionary and was not supported by reasonable suspicion. When reviewing the district court's denial of a suppression motion, we review the district court's factual findings for clear error and its determination that the search did not violate the Fourth Amendment de novo. United States v. Bell, 480 F.3d 860, 863 (8th Cir. 2007).

Hambrick contends the officers did not stop and arrest him based on his suspended license, contrary to their testimony. At the suppression hearing, two officers testified the informant identified the individual in the Monte Carlo as "Lolo," which happened to be Hambrick's street moniker. The officers also testified they ran a search of Hambrick's license with the Department of Transportation (DOT) while following Hambrick's vehicle. Hambrick suggests this testimony demonstrates that at the time of his arrest, the officers *only* knew Hambrick's street name, and they did not know Hambrick's real name in order to run the search with the DOT, as it would be impossible to run a search using "Lolo" as an identifier. Hambrick thus contends the officers lacked any articulable, reasonable suspicion for the stop and the stop was made in the hope of discovering some incriminating evidence against Hambrick.

The district court found Hambrick's argument was without merit. It concluded Hambrick's vehicle was lawfully stopped because Hambrick was driving with a suspended driver's license. The court appeared to credit the testimony of the arresting officers because it concluded the officers knew Hambrick's license was suspended prior to stopping his vehicle.

We agree with the district court's determination. First, a careful review of the record demonstrates the officers' testimony was not contradictory, contrary to Hambrick's suggestion. The officers stated the informant identified the individual in

question as "Lolo," but they were never asked whether "Lolo" was the only name they knew Hambrick by. The officers testified they determined Hambrick's license was suspended by running a check with the DOT prior to stopping Hambrick's vehicle, a fact explicitly credited by the district court in making its determination that the stop was lawful. Were we to accept Hambrick's theory on appeal, we would be required to overturn the district court's determination, which was based on its assessment of the officers' credibility, as clearly erroneous. We decline to do so under a clear reading of the record. See United States v. Harris, 617 F.3d 977, 979 (8th Cir. 2010) ("As to the facts, the district court believed the officer's testimony that the license plate was not plainly visible. This determination, based on credibility, is not clearly erroneous."). While the government concedes that some pretense existed surrounding the stop based on the suspended license due to the officers' reliance on the informant's tip, "it is well-settled that any traffic violation provides a police officer with probable cause to stop a vehicle, even if the officer conducted the valid traffic stop as a pretense for investigating other criminal activity." United States v. Escamilla, 301 F.3d 877, 880 (8th Cir. 2002).

Even if we were to accept Hambrick's theory, we would reach the same conclusion. "The Fourth Amendment permits an investigative stop of a vehicle if officers have a reasonable suspicion the vehicle or its occupants are involved in criminal activity." Bell, 480 F.3d at 863. In forming an objective and particularized basis for a reasonable suspicion of criminal activity, officers may rely on an informant's tip if the tip is both reliable and corroborated. Id. Here, the informant was well known to the officers and had provided accurate and reliable information used against at least three prior federal defendants. The informant described the vehicle's make, model, and color, as well as the fact that the vehicle was missing its gas-tank cover. The informant also successfully predicted when and where Hambrick would be and described the precise manner in which he carried drugs. In relying on this information, the officers maintained reasonable suspicion to stop Hambrick's vehicle that was based on more than "'inarticulate hunches.'" Id. (quoting Terry v.

Ohio, 392 U.S. 1, 22 (1968)).  Therefore, we reject Hambrick's argument that his Fourth Amendment rights were violated based on the stop of his vehicle.

B.  The Search of Hambrick's Automobile

We next address Hambrick's challenge to the search of his vehicle incident to arrest.  Hambrick contends his underlying stop and arrest were unlawful, and therefore the search of his vehicle incident to arrest was also unlawful.  In the alternative, Hambrick argues if the arrest was lawful, the applicability of the search incident to arrest exception is restricted by Arizona v. Gant, 129 S.Ct. 1710 (2009).

Under Gant, police may search the passenger compartment of a vehicle incident to arrest only if (1) the arrestee might have access to the vehicle at the time of the search, or (2) it is reasonable to believe the vehicle contains evidence of the offense of the arrest.  Gant, 129 S.Ct. at 1723.  Hambrick asserts neither circumstance was present in the instant matter.  The district court agreed, holding that, while the initial arrest was lawful, the vehicle search could not be justified as a search incident to arrest pursuant to Gant because Hambrick was immediately handcuffed and placed in the back of the patrol car.  However, the court further determined the search of the vehicle was proper under the automobile exception.

As discussed above, we reject Hambrick's contention that his initial stop was unlawful, which provided a basis for the arrest under Iowa law.  See Iowa Code § 321.485 (2008) (providing officers may arrest individuals for a simple misdemeanor).  We agree with the district court that the search of Hambrick's vehicle was not incident to arrest under the strictures imposed by Gant.  After his arrest, Hambrick was handcuffed and placed in the back of a patrol car, and therefore he had no access to the vehicle at the time of the search.  Moreover, like the defendant in Gant, Hambrick was arrested for driving with a suspended license, and therefore the second prong of Gant would not allow the officers to search the vehicle for evidence

of the offense of arrest. See Gant, 129 S.Ct. at 1719 ("In many cases, as when a recent occupant is arrested for a traffic violation, there will be no reasonable basis to believe the vehicle contains relevant evidence.").

However, the officers had probable cause to search the vehicle, irrespective of Gant, under the automobile exception. "Under the automobile exception, if a law enforcement officer has probable cause, he may search an automobile without a warrant." United States v. Rodriguez, 414 F.3d 837, 843 (8th Cir. 2005). To support a probable cause determination, officers may rely on an informant's tip if the informant has provided reliable information in the past or if his tip is independently corroborated. United States v. Morrison, 594 F.3d 626, 632 (8th Cir. 2010). In this case, the informant was known to the officers as a reliable source of information and he had provided reliable information in three prior narcotics seizures. The informant supplied detailed information regarding the make, model, year, and unique characteristics of Hambrick's vehicle, and he provided the precise time and address of Hambrick's stop. This information was verified by the officers upon Hambrick's arrival. See United States v. Aguilera, _ F.3d _, 2010 WL 4629314, at *3 (8th Cir. 2010) (concluding officers had probable cause to believe a vehicle contained methamphetamine based on an informant's tip that the defendant was driving a blue GMC Yukon and was en route to deliver methamphetamine); Rodriguez, 414 F.3d at 843 (holding probable cause was established, in part, by the defendant's arrival at the scheduled place and time for a controlled buy). Under these facts, we conclude the district court correctly found probable cause existed for the search of Hambrick's vehicle because the officers reasonably believed a fair probability existed that drugs would be found in the vehicle. See United States v. Marchena-Borjas, 209 F.3d 698, 700 (8th Cir. 2000) (per curiam) ("The historical reliability of the confidential informant, his provision of descriptive information not easily discoverable, and the independent corroboration of his information by investigating officers together established probable cause for [the defendant's] arrest . . . [and] create[d] with equal

force probable cause to believe that the [vehicle] contained methamphetamine.") (internal quotation marks and citation omitted).

C. The Search of Hambrick's Person

We next address Hambrick's challenge to the validity of his consent to search his person. We determine whether consent is voluntary under the totality of the circumstances, "consider[ing] the characteristics of the person consenting, 'including the party's age, intelligence and education, whether he was under the influence of drugs or alcohol, whether he was informed of his right to withhold consent, and whether he was aware of rights afforded criminal suspects.'" United States v. Esquivias, 416 F.3d 696, 700 (8th Cir. 2005) (quoting United States v. Almendares, 397 F.3d 653, 660 (8th Cir. 2005)). In addition, we consider the environment in which the defendant allegedly provided consent, specifically:

> (1) the length of time he was detained; (2) whether the police threatened, physically intimidated, or punished him; (3) whether the police made promises or misrepresentations; (4) whether he was in custody or under arrest when the consent was given; (5) whether the consent occurred in a public or a secluded place; and (6) whether he stood by silently . . . as the search occurred.

Id. (quoting United States v. Smith, 260 F.3d 922, 924 (8th Cir. 2001)). After citing these factors and reviewing videotape footage of the interrogation, the district court concluded the search of Hambrick's person was not a consensual search. However, the court determined the search was a valid station house search incident to arrest.

We agree with the district court's determination on this point. As discussed above, Hambrick was stopped for driving under a suspended license, which provided a basis for arrest under Iowa law. See Iowa Code § 321.485. He was taken to the station house within an hour, where he was searched within the guidelines of normal

police protocol. "It is . . . plain that searches and seizures that could be made on the spot at the time of arrest may legally be conducted later when the accused arrives at the place of detention." United States v. Edwards, 415 U.S. 800, 803 (1974). Hambrick's stop, arrest, and subsequent search incident to arrest squarely fit within Edwards and its progeny, and therefore, regardless of whether the search may be deemed involuntary, the district court was correct in concluding the search incident to arrest was valid.

Moreover, the district court correctly held the strip search in this case was reasonable in scope, manner, and location. "The Fourth Amendment reasonableness of a strip search turns on 'the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted." Richmond v. City of Brooklyn Ctr., 490 F.3d 1002, 1006 (8th Cir. 2007) (quoting Bell v. Wolfish, 441 U.S. 520, 559 (1979)). The search took place in an interrogation room in the Davenport Police Department and was based on highly reliable information from a well-known informant that Hambrick possessed crack cocaine between his buttocks. Moreover, the officers did not touch Hambrick, and they allowed him to remove the drugs on his own. Cf. United States v. Williams, 477 F.3d 974, 976 (8th Cir. 2007) ("[I]t was not unreasonable for the officers to assume the initiative by seizing the contraband that [the defendant] secreted in his underwear, rather than allow [the defendant] to disrobe and remove the drugs himself."). As a result, there is no evidence the officers were abusive or exceeded the reasonableness of the search in terms of scope, manner, and location.

D. Hambrick's Incriminating Statement to Officers

Finally, Hambrick challenges the district court's refusal to suppress an incriminating statement he provided to the officers. Hambrick asserts his confession should be suppressed because it was derived from an illegal stop and arrest. He also

challenges the voluntariness of his statement, claiming that his limited ability to read and write affected his understanding of the <u>Miranda</u> warnings.

In determining whether a defendant's statement is voluntary, we examine the totality of the circumstances surrounding the confession. <u>United States v. Ingle</u>, 157 F.3d 1147, 1150 (8th Cir. 1998). "The test for determining the voluntariness of a confession 'is whether, in light of the totality of the circumstances, pressures exerted upon the suspect have overborne his will.'" <u>United States v. Cody</u>, 114 F.3d 772, 776 (8th Cir. 1997) (quoting <u>United States v. Jorgensen</u>, 871 F.2d 725, 729 (8th Cir. 1989)). "Those potential circumstances include not only the crucial element of police coercion, the length of the interrogation, its location, its continuity, the defendant's maturity, education, physical condition, and mental health," but also "the failure of police to advise the defendant of his rights to remain silent and to have counsel present during custodial interrogation." <u>Withrow v. Williams</u>, 507 U.S. 680, 693-94 (1993) (internal citations omitted).

The district court dismissed Hambrick's assertion that his statement was involuntary, noting Hambrick failed to point to any specific factors making his confession involuntary. The court recognized the interrogation did not last an unreasonably long amount of time, Hambrick was familiar with police procedures based on his criminal history, and there was no evidence he had poor physical condition or mental health.

We agree. First, we note Hambrick does not argue he was not provided <u>Miranda</u> warnings. Second, the duration of the interrogation was relatively brief, lasting just over an hour. In analyzing Hambrick's individual characteristics, he is twenty-eight years old and maintains a familiarity with police procedures based on his lengthy criminal history. As the district court noted, there is no evidence and no allegation of Hambrick having a physically poor condition or weakened mental health.

-10-

The district court duly weighed these factors and found the confession voluntary, and under the totality of the circumstances, we cannot say its determination was incorrect.

## III

We affirm Hambrick's conviction in all respects.

_____